UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ALICIA A. COVILL,                        :
         Plaintiff,                    :
                         :
         v.                             :        C.A. No. 15-485M
                         :
CAROLYN W. COLVIN, ACTING                :
COMMISSIONER OF SOCIAL SECURITY,         :
         Defendant.                    :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

Plaintiff Alicia A. Covill alleges that she is disabled due to panic attacks, anxiety and depression; this appeal is focused on the severity of the limitations caused by these well-established impairments. She has filed a motion to reverse the decision of the Commissioner of Social Security (the "Commissioner"), denying Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). She alleges that multiple errors tainted the decision of the Administrative Law Judge ("ALJ"), including his adverse credibility finding; his decision to afford minimal weight to the opinions of her treating psychiatrist and therapist, relying instead on the reviewing opinion of the Social Security Administration ("SSA") psychologist; and his failure to conform his residual functional capacity ("RFC")[1] finding to the to the SSA psychologist's opinion. Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, and guided

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

by the well-settled principle that this Court may not substitute its own judgment for that of the Commissioner, see Brown v. Apfel, 71 F. Supp. 2d 28, 30-31 (D.R.I. 1999), I find that the ALJ's findings are sufficiently supported by substantial evidence and recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED.

## I.   Background

### A.   Plaintiff's Background

Plaintiff is a younger individual, thirty-four at the alleged onset of disability on May 22, 2012. A high school graduate, who had been attending (and continued to attend during the period of disability)[2] college,[3] she also worked as a bartender and "at the piano bar doing pianos" (she is a talented musician). Tr. 33-35, 248. A self-described person who "love[s] people," Tr. 33, she has raised her son alone; he was fifteen at the date of onset. Tr. 212.

Since the age of twenty-three, Plaintiff has had anxiety attacks. Tr. 37. While she was working, Plaintiff's mental health care was provided by her primary care providers at Anchor Medical (Dr. Hardy and Physician Assistant Kochansky). Tr. 231-36. During this period, she frequently went to the emergency room at Kent Hospital due to anxiety and panic attacks. Tr. 37, 195, 202, 203, 212. While no provider has questioned the credibility of Plaintiff's claim of anxiety and panic attacks, despite many presentations to the emergency room, Plaintiff was never hospitalized. Rather, after mental status examinations that were generally normal except for anxiety and occasionally depression, she was sent home. See, e.g., Tr. 198 ("[w]ell appearing

---

[2] At the hearing, Plaintiff explained that she stopped taking courses after the fall of 2013, and that she only able to complete one course in that semester due to an accommodation from the professor who allowed her to do the work online. Tr. 45-46. She enrolled in two others but did not complete them. Id.

[3] As of the hearing, she had completed three years of credit. Tr. 32.

and in no distress on leaving ER"); Tr. 213 (released to home improved and stable).  The only global assessment of functioning ("GAF")  score assigned during this pre-onset period was 55, evidencing moderate difficulties, which was assessed by a licensed social worker at the Kent Center a day after she had been to the emergency room.[4]  Tr. 200.

In the period leading up to onset, Plaintiff was working three jobs, attending school part-time and caring for her son.  Tr. 212.  Overwhelmed by stress, in April 2012, she attempted suicide by ingesting an overdose of prescribed Klonopin.  Tr. 217.  In May 2012, she lost her job.  Since then, the record refers to various work and work-like activities.  Tr. 226 (in July 2012, medical treatment needed after drinking something at work); Tr. 230 (in August 2012, reported she began new job); Tr. 241 (in October 2012, reported she is working intermittently doing painting at friend's business); Tr. 292 (in January 2013, reported being full-time student in teaching, science, and music); Tr. 315 (in April 2013, medical treatment sought after dizziness at work); Tr. 357 (in December 2013, medical treatment for tendinitis after moving); Tr. 389 (in February 2014, medical treatment for leg pain after heavy lifting while helping someone move).  However, to the extent that any of these activities constituted "work," none resulted in sufficient income to amount to a "substantial gainful activity" ("SGA").  See Tr. 11 (Plaintiff has not had SGA since onset).

---

[4] The Global Assessment of Functioning ("GAF") scores relevant to this case are in the 41 – 50 range, which indicates "serious impairment in social, occupational, or school functioning," the 51 – 60 range, which indicates "moderate difficulty in social, occupational, or school functioning," and the 61 – 70 range, which indicates some mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well.  See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 32–34 (4th ed. 2000) ("DSM–IV–TR").  The most recent update of the DSM has eliminated the GAF scale because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"  Santiago v. Comm'r of Soc. Sec., No. 1:13-CV-01216, 2014 WL 903115, at *5 n.6 (N.D. Ohio Mar. 7, 2014) (citing Diagnostic and Statistical Manual of Mental Disorders at 16 (5th ed. 2013) ("DSM–5")).  Nevertheless, adjudicators may continue to receive and consider GAF scores.  SSA Admin. Message 13066 at 2-6, available at http://www.nysba.org/WorkArea/DownloadAsset.aspx?id=51489 (starting at p.19 of PDF document) (last visited Sept. 22, 2016).

After the April 2012 emergency room treatment for the overdose, although she went to the emergency room for other reasons, Tr. 226, Plaintiff had a gap in mental health treatment. She did not see any provider for mental health treatment until August 2012, when she initiated care with a new primary care physician at Anchor Medical, Dr. Lyster.  Tr. 230.  At this appointment, Plaintiff complained of a headache; Dr. Lyster noted "[n]o recent discrete panic attacks" and that Plaintiff had recently begun a new job.  Id.  On mental status examination, Dr. Lyster found anxious thoughts and mood due to feeling "stressed as [a] single working mom also in school."  Tr. 231.

After another treatment gap, on October 3, 2012, Plaintiff filed her disability application. The next day, she saw Dr. Lyster and complained of panic attacks and depression and explained that she "did not want to make a f/u appt until her insurance was in effect."  Tr. 228.  Based on her complaints, Dr. Lyster referred her to psychiatry for acute depression and chronic anxiety. Tr. 229.  On October 13, 2012, Plaintiff started therapy with Nurse Janis DeNuccio at Quality Behavioral Health ("QBH") and on October 31, 2012, she initiated care with a psychiatrist at QBH, Dr. Terry Mailhot.  Tr. 246, 253.

Meanwhile, when Plaintiff returned to Dr. Lyster on October 18, 2012, she reported working intermittently painting a friend's business, increased exercise, more time spent doing music and increased focus on her son's well-being.  Tr. 241.  Dr. Lyster's mental status examination findings were largely normal.  Tr. 242.  Plaintiff did not see Dr. Lyster again for mental health issues until February 4, 2013,[5] when she reported panic attacks twice a week; on mental status examination, Dr. Lyster made normal findings except for anxiety, which she observed was "improving."  Tr. 399-401.  Plaintiff told Dr. Lyster that she "was uninsured for a

---

[5] At approximately the same time (late January 2013), Plaintiff went to the Kent Hospital emergency room for a physical complaint; on mental status examination, she was observed to be oriented with normal mood and affect. Tr. 293-94.

time, now reinstated." Tr. 400. As far as the record reflects, this is Plaintiff's last appointment

with Dr. Lyster in the relevant period.

Between October 31, 2012, and January 28, 2014, Plaintiff saw Dr. Mailhot a total of

seven times.[6] Tr. 246-52, 297, 369, 375, 382, 384-87. During the intake examination, Dr.

Mailhot observed that Plaintiff was oriented with decreased concentration and attention, no

psychosis, and fair insight and judgment; based on Plaintiff's reports of anxiety and a fear of

crowds, Dr. Mailhot diagnosed an anxiety disorder and assessed Plaintiff's GAF at 60,

evidencing moderate symptoms. Tr. 252. Despite Dr. Mailhot's treating form, which calls for

recording the results of a mental status examination at every appointment, this is the only one

recorded in the treating record.[7] Over the course of treatment, Dr. Mailhot diagnosed bipolar and

anxiety disorders, prescribed Lithium and Klonopin, and noted frequent and severe panic attacks

but also that, noted that, other than in October 2013, Plaintiff no longer went to the emergency

room due to anxiety. Tr. 382.

During approximately the same period (October 2012 through December 2013), despite a

plan to have therapy every two weeks, Plaintiff saw Nurse Janis DeNuccio for therapy a total of

seven times. Tr. 253, 296, 301, 374, 376, 380, 383. The therapy notes reflect Plaintiff's anxiety

and panic attacks. See, e.g., Tr. 296 ("frequent anxiety attacks, poor sleep"); Tr. 301 ("unable to

relax"); Tr. 380 ("anxious, tearful, and overwhelmed after ending a long-term relationship").

Much of the focus of the therapy was on the development of relaxation techniques. Id. There

---

[6] The parties squabble about the significance of Dr. Mailhot's notation in her opinion that her appointments with Plaintiff "should be monthly," but plainly were not. See Tr. 309. Plaintiff's contention that this is a forward looking comment and evidences a worsening of Plaintiff's condition is utterly without support as the appointments after that notation are as infrequent as those before. See Tr. 246-52, 297, 369, 375, 382, 384-87.

[7] Instead of full mental status examination observations, Dr. Mailhot generally used this space to record Plaintiff's struggle to keep her weight up. See, e.g., Tr. 297 (mental status exam: looks tired, needs coffee, slow, questions diagnosis of bipolar); Tr. 369 (mental status exam: looks gaunt, lost weight); Tr. 375 (mental status exam: "has lost 10# in 3 mos her BMI is borderline healthy"); Tr. 382 (mental status exam: rash on back); Tr. 384 (mental status exam: looks thin a bit agitated).

are no mental status examinations, although at each appointment, Nurse DeNuccio recorded Plaintiff's subjective report of her mood level.

In October 2013, Plaintiff was overwhelmed by severe anxiety after finding out that the house she was renting had been sold and that she would have to move.  In the face of this stress, Plaintiff sought emergency treatment at Kent Hospital, where she was diagnosed with panic disorder without agoraphobia.  Tr. 345-56.  On mental status examination, all findings were normal, except for anxious mood; her GAF score was assessed at 70 (evidencing mild symptoms).  Tr. 346-47.  For reasons that are not clear, apparently on the same day,[8] Plaintiff was also assessed at the emergency room at Rhode Island Hospital ("RIH"), where her GAF was noted to be 45, evidencing serious symptoms.  Tr. 427-35.  She was not admitted to either Kent or RIH; RIH staff "discharged [her] to home," noting "condition is good."  Tr. 435.

## B.    Opinion Evidence

On January 10, 2013, SSA psychologist Dr. Mary Hahn reviewed the file and opined to anxiety disorder as a severe impairment, resulting in mild limitations in activities of daily living and social functioning and moderate limitations in maintaining concentration, persistence, and pace with no episodes of decompensation of extended duration.  Tr. 57-58.  While Plaintiff's anxiety might occasionally disrupt task focus, limiting her persistence to two-hour intervals, Dr. Hahn found that she could make simple work-related decisions, manage tasks both independently and around others, and maintain a regular schedule.  Tr. 59.  Dr. Hahn's review was performed before either Dr. Mailhot or Nurse DeNuccio submitted their opinions; however, Dr. Mailhot's psychiatric evaluation was in the file and Dr. Hahn specifically noted it in her opinion.  Tr. 57.  Based on this evidence, the claim was denied initially.

---

[8] There is a potential explanation in the RIH notes, which are dated the same day as the Kent Hospital notes, but also state, "seen at Kent Hospital yesterday for anxiety . . . They reportedly did labs and sent her home.  Her boyfriend . . . then broke up with her, so her anxiety level increased."  Tr. 433.

On March 25, 2013, after three encounters with Plaintiff, Dr. Mailhot signed an opinion on Plaintiff's mental functioning. Tr. 309-12.[9]  In it, she lists diagnoses of bipolar disorder and anxiety disorder and notes that Plaintiff has had a poor response to pharmacology, although there are no known side effects to her medications.  Tr. 309.  The opinion provides for moderately-severe limitations in virtually every sphere of mental functioning, except for the ability to perform simple tasks, sustain personal habits, respond to coworkers and maintain attention and concentration, as to which Dr. Mailhot opined to moderate limitations.  Tr. 310-11; ECF No. 10-2 at 4.  Her opinion makes no attempt to harmonize these moderately severe findings with her own assessment of "moderate symptoms" only five months prior.  See Tr. 252.

In July 2013, during the reconsideration phase, SSA psychologist Dr. Stephen Clifford reviewed the file.  He reviewed additional records submitted by Plaintiff, both from Dr. Mailhot and Nurse DeNuccio, and agreed with Dr. Hahn's opinion.  Tr. 68-70.  It is not clear whether these submissions included Dr. Mailhot's opinion, which was transmitted by counsel on April 4, 2013.  Tr. 312.  It appears that the Mailhot opinion may not have been included because the reconsideration explanation states that "[t]here is no indication that there is medical or other opinion evidence."  Tr. 69.

The final opinion is dated April 2, 2014; in it, Nurse DeNuccio noted diagnoses of anxiety disorder with panic and bipolar disorder and treatment consisting of psychotherapy,

---

[9] Apparently, a page of Dr. Mailhot's opinion was missing from the record reviewed by the ALJ.  See ECF No. 10-1 at 13.  The list of exhibits to the ALJ's decision indicates that Exhibit 25F, which is Dr. Mailhot's opinion with the accompanying transmittal letter, is four pages.  Tr. 23.  Exhibit 25F as it appears in the record is also four pages – three pages of opinion with the letter.  Tr. 309-12.  However, Plaintiff's transmittal describes the opinion as being a four page document, not a three page document.  Tr. 312.  Moreover, the page numbers at the foot of the version in the record makes clear that page 3 of 4 is missing.  Tr. 310-11.  Plaintiff has submitted the full opinion with her brief.  ECF No. 10-2 at 2-5.  I reject the Commissioner's request that the Court ignore this submission; instead, I have considered Plaintiff's submission to determine whether it has any bearing on the ALJ's decision to afford minimal weight to the opinion.  Because the missing page simply opines, consistently with the balance of the form, to moderately severe limitations in the ability to handle complex instructions and to respond to supervision and customary work pressures, as the ALJ assumed in his alternative hypothetical to the VE, Tr. 50-51, I find that the missing page has no bearing on the Court's decision.

lithium and clonazepam, with no side effects from the medications.  Tr. 422.  Except for Plaintiff's personal habits and activities of daily living, she opined that Plaintiff was moderately severely or severely limited in every area of mental functioning and would miss more than four days from work a month due to her condition.  Tr. 423-25.

## II.    Travel of the Case

On October 3, 2012, Plaintiff applied for DIB, Tr. 62, alleging disability beginning May 22, 2012, due to depression and anxiety.  Tr. 54.  The application was denied initially, Tr. 62, and on reconsideration, Tr. 73.  At a hearing on April 15, 2014, Plaintiff, represented by an attorney, and a vocational expert ("VE") testified.  Tr. 25-26.  On May 28, 2014, the ALJ issued his decision finding that Plaintiff was not disabled within the meaning of the Act.  Tr. 6-19.  On September 15, 2015, the Appeals Council denied Plaintiff's request for review, Tr. 1-3, making the ALJ's decision the Commissioner's final decision subject to judicial review.  42 U.S.C. § 405(g).

## III.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819

F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision on plenary review, if the ALJ applies incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that the law was applied properly.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).

To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).  Where the Court cannot discern the basis for the Commissioner's decision, a Sentence Four remand may be appropriate to allow an explanation of the basis for the decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On remand under Sentence Four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a Sentence Four remand, the Court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

## IV.   **Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.    **Treating Physicians and Other Sources**

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the

opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

A treating source who is not a licensed physician or psychologist[10] is not an "acceptable medical source."  20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006).  Only an acceptable medical source may provide a medical opinion entitled to controlling weight to establish the existence of a medically determinable impairment.  SSR 06-03p, 2006 WL 2263437, at *2.  An "other source," such as a nurse practitioner or licensed clinical social worker, is not an "acceptable medical source," and cannot establish the existence of a medically determinable impairment, though such a source may provide insight into the severity of an impairment, including its impact on the individual's ability to function.  Id. at *2-3.  In general, an opinion from an "other source" is not entitled to the same deference as an opinion from a treating physician or psychologist.  Id. at *5.  Nevertheless, the opinions of medical sources who are not "acceptable medical sources" are important and should be evaluated on key issues such as severity and functional effects, along with other relevant evidence in the file.  Id. at *4.  The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20 C.F.R. § 404.1545-1546, or the application of vocational factors because that ultimate

---

[10] The regulations recognize other categories of providers as acceptable medical sources for certain impairments; for example, a licensed optometrist is acceptable for measurement of visual acuity and visual fields.  SSR 06-03p, 2006 WL 2263437, at *1.

determination is the province of the Commissioner.  20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

**B.     Evaluation of Subjective Symptoms**

When an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence.  See Frustaglia, 829 F.2d at 195.  The lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

**V.     Application and Analysis**

**A.     The ALJ's Treatment of Opinions**

This appeal rises or falls on whether the ALJ's treatment of the opinion evidence is legally correct.  The ALJ accepted that Plaintiff has long suffered from anxiety disorder and that she experiences frequent panic attacks.  The issue is whether the ALJ's determination of the severity of the limitations caused by anxiety and panic attacks was tainted by error; that depends principally on whether the ALJ had substantial evidence to support his reasons for affording minimal weight to both Dr. Mailhot, the treating psychiatrist, and Nurse DeNuccio, the treating

therapist and to support the considerable weight afforded to SSA reviewing psychologist Dr. Clifford.

I begin the analysis with Dr. Mailhot's opinion.  The ALJ discounted it as neither supported by nor consistent with the longitudinal record, as well as inconsistent with Plaintiff's hearing testimony that she drives her son to school, keeps busy in her home with housework, cooking and laundry, goes out shopping with her aunt, visits her grandmother, socializes in her home with her aunt and good friends and attended college during much of the period of disability.[11]  Tr. 40-45.

The inconsistency between Dr. Mailhot's opinion and the balance of the medical record, including her own treating notes provides ample support for the ALJ's finding of inconsistency with the record.  For starters, Dr. Mailhot's intake evaluation performed on October 31, 2012, which was reviewed and relied upon by the SSA reviewing psychologists, considered Plaintiff's claims of panic attacks and anxiety and nevertheless found that Plaintiff's overall functioning assessment was summarized in a GAF of 60,[12] reflective of moderate symptoms; this treatment-based finding clashes with her opinion, which assessed moderately severe limitations in most functional categories.  Dr. Mailhot's only other treatment notes in the record prior to her March 2012 opinion reflects only that Plaintiff's mood was like a roller coaster and that she looked tired, "needs her coffee to wake up."  Tr. 297.  Also inconsistent are the contemporaneous

---

[11] Plaintiff attacks this portion of the ALJ's "reasons" for discounting Dr. Mailhot's opinion by arguing that the ALJ ignored Plaintiff's testimony that her home was "a safe place for me." Tr. 41.  This argument is without merit.  The ALJ properly relied on a mix of activities, some of which were done entirely in the home and some of which required leaving the home.  Plaintiff's testimony about her ability to do both is what the ALJ was referencing.

[12] Citing Hall v. Colvin, 18 F. Supp. 144, 153 (D.R.I. 2014), Plaintiff seeks to discount this evidence because of the recent abandonment of the GAF score by the American Psychiatric Association (APA), with its release of the Fifth Edition of The Diagnostic and Statistical Manual of Mental Disorders (DSM-5).  The problem with this argument is that it is Dr. Mailhot's GAF score that is inconsistent with her opinion.  Under this circumstance, it is illogical to posit that the Court must ignore it

14

examinations performed by Plaintiff's primary care physician Dr. Lyster (whose longitudinal experience with Plaintiff significantly exceeded Dr. Mailhot's contacts). For example, on October 18, 2012, Dr. Lyster noted that Plaintiff was working intermittently (painting a friend's business), exercising more, focusing on her son and spending more time on her music; her mental status assessment was essentially entirely normal. Tr. 242. In February 2013, Dr. Lyster's mental status examination, performed just weeks before Dr. Mailhot had her third appointment with Plaintiff and completed her opinion, concludes that everything is normal, except for anxiety, which Dr. Lyster noted was improving. Tr. 399-401; see also Tr. 293-94 (in January 2013, Kent Hospital mental status examination findings all normal, including normal mood and affect). These opinions are utterly inconsistent with Dr. Mailhot's opinion that Plaintiff's ability to relate to others, function socially, range of interests or ability to leave the home is moderately severely impaired.

The ALJ also properly found that Dr. Mailhot's opinion that Plaintiff's activities of daily living were moderately impaired was inconsistent with Plaintiff's testimony that she was able to do chores (cleaning, laundry, cooking) and that keeping herself busy helped to control her anxiety. Tr. 41. Similarly, the ALJ committed no error in finding that Plaintiff's ability to function socially with friends, drive, shop for groceries with her aunt, visit with her grandmother and attend college for much (although not all) of the period of alleged disability is inconsistent with Dr. Mailhot's opinion that Plaintiff was unable to relate to other people, respond to work pressure or deal with complex instructions. Tr. 40-46. This evidence is corroborated by Plaintiff's success in moving herself and her son in December 2013, as well as by her need for medical treatment for aching legs after she helped a friend to move in February 2014. Tr. 357, 374, 388. Nurse DeNuccio's opinion suffers from the same flaws. If anything, it is less

consistent with the record because her findings are even more extreme than those of Dr.

Mailhot.[13]

In sum, I find that the ALJ permissibly gave minimal weight to the opinions of Dr.

Mailhot and Nurse DeNuccio based on their inconsistency with the evidence of record.  See

Bliven v. Astrue, CA No. 11-323, 2012 WL 2064501, at *9 (D.R.I. May 17, 2012) (quoting

Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (explaining that the ALJ "may reject

a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in

the record")), adopted, 2012 WL 2064487 (D.R.I. June 7, 2012); 20 C.F.R. § 404.1527(c)(4)

("Generally, the more consistent an opinion is with the record as a whole, the more weight we

will give to that opinion.").  The issue that remains is whether error taints the ALJ's reliance on

the reviewing opinion of SSA psychologist Dr. Clifford.  Plaintiff argues only that medical

opinions from treating sources are supposed to be given "more weight" than those of reviewing

psychologists.[14]  With the decision to afford minimal weight to the treating source opinions

adequately supported by substantial evidence, I find that the ALJ did not err in elevating Dr.

Clifford's reviewing opinion to the level of "considerable weight," Tr. 17, and relying on it to

forge his RFC.  See Shaw v. Sec'y of Health & Human Servs., No. 93-2173, 1994 WL 251000,

at *3 (1st Cir. June 9, 1994) (if treating doctor's opinion is inconsistent with other substantial

evidence in record, requirement of controlling weight does not apply); Mercado-Mari v. Comm'r

of Soc. Sec., Civil No. 14-1292(BJM), 2015 WL 3629964, at *13 (D.P.R. June 10, 2015)

---

[13] Plaintiff invests considerable energy in attacking the ALJ's observation that Nurse DeNuccio is not an acceptable medical source.  The effort is to no avail – the law is clear that an opinion from a non-acceptable medical source is not entitled to the same degree of deference as an opinion from a physician or psychologist.  SSR 06-03p, 2006 WL 2263437, at *5.  The ALJ did not err in making that point.

[14] Other than noting that Dr. Clifford may have seen only Dr. Mailhot's treating evaluation and notes, and not her opinion, Plaintiff does not argue that this is a reason to reject his opinion.  I agree.  Dr. Mailhot's opinion adds material information only if it is consistent with the clinical observations recorded in her treating record; because it does not, its omission does not undermine the reliability of Dr. Clifford's work.  To be clear, I cannot determine one way or the other whether Dr. Clifford saw it.  For purposes of this analysis, I assume that he did not.

(generally controlling weight should be given to treating physicians' opinions, but if they are not well-supported and are inconsistent with other medical evidence in record, ALJ may accord greater weight to non-treating sources) (citing 20 C.F.R. § 404-1527(d)(2)); Wilkinson v. Astrue, No. CA 07-090 M, 2008 WL 1925133, at *3 (D.R.I. Apr. 30, 2008) (permissible for ALJ to give more weight to opinions of reviewing state agency psychologists and consultative examiner than to other physician's inconsistent evaluation).

### B.    Credibility

Plaintiff argues that the ALJ's finding that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision," Tr. 16, is error because it was based on activities that all occurred within the safety of her home and do not conflict with the findings in Dr. Mailhot's opinion, as well as because it relied on treatment gaps without considering Plaintiff's lack of insurance.  She contends that these failures breach the ALJ's duty to "articulate specific and adequate reasons" for rejecting the claimant's allegations, requiring remand.  Forbes v. Colvin, No. CA 14-249-M-PAS, 2015 WL 1571153, at *11 (D.R.I. Apr. 8, 2015); see also Auger v. Astrue, No. CA 09-622S, 2011 WL 846864, at *9 (D.R.I. Feb. 3, 2011).

The Court's review of the ALJ's evaluation of credibility must be guided by the principle that it is entitled to deference as long as it is supported by specific findings.  Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  In this decision, the ALJ's analysis of credibility is nuanced, detailed and well anchored to the record.  Tr. 16.  The stated "reasons" are that: (1) Plaintiff's claims of persistent side effects were not supported by the record; (2) Plaintiff's admitted activities of daily living were inconsistent with her statements regarding her limitations; (3) Plaintiff's claims were inconsistent with mental status

examinations showing no significant abnormalities; and (4) Plaintiff's irregular mental health treatment was inconsistent with her claim that anxiety and panic attacks were overwhelming. Importantly, the ALJ also specifically relied on his observation of Plaintiff at the hearing, including that she was alert, pleasant and calm and spoke in an informative manner.  Tr. 16; see Mariano v. Colvin, C.A. No. 15-018ML, 2015 WL 9699657, at *10 (D.R.I. Dec. 9, 2015) (court must defer to credibility because ALJ is individual optimally positioned to observe and assess witness credibility), adopted, 2016 WL 126744 (D.R.I. Jan. 11, 2016); Cruz v. Astrue, C.A. No. 11-638M, 2013 WL 795063, at *16 (D.R.I. Feb. 12, 2013) ("[i]n critiquing the ALJ's credibility determination, this Court is mindful of the need to tread softly, because '[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence'") (quoting Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991), adopted, 2013 WL 802986 (D.R.I. Mar. 4, 2013).  The only issue for the Court is whether each of these four reasons is sufficiently grounded on substantial evidence.  I find that they are.

First, Plaintiff's testimony that her fatigue is due to the side effects of her medications, Tr. 37, 40-42, is contradicted in Dr. Lyster's treating notes, and in Dr. Mailhot's and Nurse DeNuccio's opinions, all of which noted the absence of side effects from medication.  Tr. 241, 309, 422.  While the record is replete with other references to Plaintiff's tiredness, this evidence is enough to support the ALJ's finding that her subjective claim of side effects is inconsistent with the record.  See Rodriguez v. Sec'y of Health & Human Servs., No. 94-1868, 1995 WL 45781, at *5 (1st Cir. Feb. 7, 1995) (credibility finding supported by inconsistencies, including claim of adverse side effects not corroborated by medical record).  Second, there is no error in the ALJ's marshaling of the evidence of Plaintiff's admitted activities of daily living, including

acting as the sole caregiver of her teenage son, maintaining her home, cooking, driving, shopping, moving to a new apartment, helping a friend to move, socializing with friends and family, using the computer, pursuing her college education and working intermittently throughout the period of alleged disability.  Tr. 40-45, 169-72, 212, 218, 226, 230, 292, 314, 357, 388, 401.  While some of these are in-home activities, others are not so limited; this evidence is sufficiently inconsistent with Plaintiff's claim that she was mentally unable to function outside the home to support the ALJ's reference to them as a "reason."  See Morey v. Colvin, C.A. No. 14-433M, 2015 WL 9855873, at *17 & n.16 (D.R.I. Oct. 5, 2015) (credibility finding amply supported by evidence of daily activities – some outside home – including preparing meals, doing laundry, vacuuming, cleaning, shopping and socializing), adopted, 2016 WL 224104 (D.R.I. Jan. 19, 2016); Cookson v. Colvin, 111 F. Supp. 3d 142, 154 (D.R.I. 2015) (credibility finding supported by evidence of shopping, preparing meals, cleaning and spending time with others).  Similarly, the third "reason," the ALJ's finding that the mental status examination evidence conflicts with Plaintiff's statements, is well grounded in the treating records of Dr. Lyster, Kent Hospital and even Dr. Mailhot.  See Tr. 242, 252, 293-94, 399-401.

The only "reason" requiring a deeper dive is the ALJ finding that the gaps in Plaintiff's mental health treatment are inconsistent with her claims of disabling anxiety.  Tr. 16.  Looking first at the "gaps," Plaintiff concedes, as she must, that there are several significant lapses in treatment, starting with Plaintiff's failure to see Dr. Mailhot monthly[15] as recommended, and her

---

[15] Except for the appointment immediately preceding Dr. Mailhot's signing of her opinion, as to which there is no treating record, Plaintiff never saw Dr. Mailhot monthly.  Rather, there were gaps ranging from two months to four months throughout the course of treatment.  Tr. 246, 297, 369, 375, 382, 384, 387; see Tr. 306 (only three appointments prior to opinion despite recommendation that "should be monthly").  There is also no evidence to support Plaintiff's argument that Dr. Mailhot increased her treatment to monthly after she wrote the opinion due to worsening symptoms.

failure to attend therapy appointments every two weeks as recommended.[16]  More significant,

there is a six-month gap in all mental health treatment between Plaintiff's pre-onset overdose in

April 2012 until the flurry of treatment in October 2012, which treatment coincided with the

filing of her disability application.  A similar four-month gap – no mental health treatment at all

– follows, with the next evidence of mental health-related treatment in February 2013.  It is well

settled that an ALJ may consider such lapses in treatment in discounting a claimant's subjective

complaints.  See SSR 16-3P, 2016 WL 1119029, at *8 (S.S.A. Mar. 16, 2016) ("if the frequency

or extent of the treatment sought by an individual is not comparable with the degree of the

individual's subjective complaints . . . we may find the alleged intensity and persistence of an

individual's symptoms are inconsistent with the overall evidence of record").

　　　　Plaintiff tries to rebut this evidence by claiming that the lapses are explainable in that she

was uninsured and therefore unable to maintain regular treatment.  Consistently, Dr. Lyster noted

in October 2012 that she "did not want to make a f/u appt until her insurance was in effect" and

in February 2013 that Plaintiff had been "uninsured for a time" but that her coverage had been

reinstated.  Tr. 228, 400.  The problem with this argument is that the record reflects that Plaintiff

was insured throughout most of the relevant period.  Tr. 209, 228, 231-32, 277, 313, 336, 397,

399.  Even more important, the record reflects that Plaintiff did seek and obtain medical

treatment during the gaps, albeit for problems largely unrelated to her mental health.  See Tr. 226

(during six-month gap in 2012, Plaintiff goes to Kent Hospital because something was slipped in

her drink); 230 (during six-month gap in 2012, Plaintiff sees Dr. Lyster for headache); Tr. 255

(during four-month gap in 2012-2013, Plaintiff goes to Kent Hospital for alcohol intake, noting

depression and anxiety); Tr. 293 (during four-month gap in 2012-2013, Plaintiff goes to Kent

---

[16] Plaintiff only once came close to meeting the treatment recommendation in that she had two appointments with
Nurse DeNuccio in October 2012.  Tr. 253, 301.  Otherwise the gaps range from one month to six months.  Tr. 253,
296, 301, 374, 376, 380, 383.

Hospital for hemorrhoids); Tr. 402 (during four-month gap in 2012-2013, Plaintiff sees Dr.

Lyster for hemorrhoids); Tr. 404 (during four-month gap in 2012-2013, Plaintiff sees Dr. Lyster

for flu symptoms).  At almost every one of these appointments, the medical record reflects that

she was insured.  Tr. 228, 231-32, 399, 402, 404.  Based on this evidence, I find no error in the

ALJ's reliance on the substantial gaps in Plaintiff's mental health treatment.

I find that substantial evidence supports each of the ALJ's "reasons" for the finding that

Plaintiff's subjective complaints were not consistent with the record.  Coupled with the ALJ's

observation of Plaintiff's demeanor during the hearing, this evidence is more than sufficient to

avoid remand of this matter for a credibility do-over.

### C.     ALJ's RFC Finding

Plaintiff's attack on the ALJ's RFC finding is based only on what she contends is a

material divergence between the RFC and the limitations as laid out in Dr. Clifford's opinion.

The argument is based on the ALJ's determination that, while he afforded considerable weight to

Dr. Clifford's opinion, he also gave Plaintiff the benefit of the doubt by finding her more socially

limited than Dr. Clifford had found.  Tr. 17, n.4.  If this be error, it does not justify remand.  See

Morris v. Astrue, C.A. No. 11-625S, 2013 WL 1000326, at *16 (D.R.I. Feb. 1, 2013) (where

ALJ assigns RFC that is more restrictive than evidence warranted, any error was harmless),

adopted sub nom., Morris v. Colvin, 2013 WL 997132 (D.R.I. Mar. 13, 2013).

### VI.    Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Reversal of the

Disability Determination of the Commissioner of Social Security (ECF No. 10) be DENIED and

Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be

GRANTED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
September 22, 2016